## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SHERYL FOWLER, PATRICK LUCAS, | ) |
| WANDA LUCAS, and | ) |
| WILLIAM J. MORTON | ) |
| on behalf of themselves and | ) |
| all others similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. |
| v. | ) COMPLAINT-CLASS ACTION |
| | ) |
| SCANA ENERGY MARKETING, INC., | ) |
| | ) |
| Defendant. | ) |
| _____/ | |

## FIRST AMENDED COMPLAINT

Plaintiffs Sheryl Fowler, Patrick Lucas, Wanda Lucas, and William J.

Morton on behalf of themselves and all others similarly situated, file this

Complaint to bring this action against Defendant SCANA Energy Marketing, Inc.

("SCANA").  Based upon personal knowledge, information and belief, and the

investigation and research of their counsel, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      The Court has original jurisdiction over this action pursuant to 28 U.S.C.

§1332(d)(2)(A), because the matter in controversy exceeds $5,000,000.00,[1]

---

[1]      SCANA Energy's website currently states that the company serves "approximately
460,000 customers throughout Georgia." SCANA Energy, http://www.scanaenergy.com/en/why-

exclusive of interest and costs, and Plaintiffs are citizens of a state different than SCANA.

2.      Venue is proper pursuant to 28 U.S.C. §1391(b).

## THE PARTIES

3.      At all times material, Sheryl Fowler was and is a resident and citizen of the State of Georgia.  At all times material, Sheryl Fowler was a Legacy SCANA Customer in the SCANA Variable Pricing Plan.[2]

4.      At all times material, Plaintiffs Patrick and Wanda Lucas were and are residents and citizens of the State of Georgia.  At all times material, Patrick Lucas and/or Wanda Lucas was and is a Legacy SCANA Customer in the SCANA Variable Pricing Plan.

---

scana-energy/ (last visited July 3, 2012). The Atlanta Journal - Constitution ("AJC") published several articles about SCANA's alleged misconduct that is the subject of this case. A February 29, 2008 AJC article, entitled *Gas sellers face suits over prices*, reported that "most Georgia gas customers are on variable plans, according to PSC filings." Margaret Newkirk, Gas sellers face suits over prices, AJC, Feb. 29, 2008, at lA. The article also reported that SCANA customers affected by SCANA's alleged misconduct were overcharged on average by $107.30. Id. Based on this information, Plaintiffs easily satisfy the $5,000,000 jurisdictional amount set forth in 28 U.S.C. § 1332(d)(2)(A).

[2] A Legacy SCANA Customer is defined as: (1) all SCANA customers who were enrolled in either the SCANA (Variable Pricing Plan) or the SCANA (Variable Choice Plan) before March 1, 2007 and remained in those plans after March 1, 2007 and (2) any SCANA customer enrolled in a SCANA fixed rate contract prior to March 1, 2007 and who after March 1, 2007 was placed by default in the SCANA Variable Choice Plan (hereinafter collectively referred to as "Legacy SCANA Customer(s)" or "Class Members.")

5.     At all times material, Plaintiff William J. Morton was and is a resident and citizen of the State of Georgia. At all times material, Mr. Morton was and is a Legacy SCANA Customer in the SCANA Variable Pricing Plan.

6.     SCANA is a for-profit corporation organized and incorporated under the laws of South Carolina with its principal place of business and headquarters located at 1426 Main Street MC 092, Columbia, South Carolina 29201.

7.     The Class Period of this action runs from March 1, 2007 to the present.

8.     During the entire Class Period, SCANA held and currently holds Interim Natural Gas Certificate No. GM-OOIO through the Georgia Public Service Commission ("Commission" or "PSC") authorizing it to make natural gas commodity sales under the "Natural Gas Competition and Deregulation Act," as amended.

9.     During the entire Class Period, SCANA was a "Marketer" pursuant to O.C.G.A. §46-4-152(l3).

10.    As a statutory Marketer, SCANA engaged and continues to engage in selling natural gas and, as a result, was and is subject to, inter alia, the provisions of O.C.G.A. §46-4-160 et seq., as well as duly promulgated rules and regulations issued by the PSC under such Code section.

## NATURE OF THE ACTION

11.     Plaintiffs bring this action on behalf of themselves and all individuals or entities who, during the period from March 1, 2007 to the present, were Georgia residents and Legacy SCANA Customers and were overcharged by SCANA as a result of a billing scheme  as defined by O.C.G.A. §46-4-160.2 for the price of natural gas (per therm) and for monthly customer service charges.

12.     Beginning in March 2007, SCANA unlawfully charged its Legacy SCANA Customers in both the SCANA Variable Pricing Plan and the SCANA Variable Choice Plan a price for natural gas at a per therm rate that exceeded the maximum rate SCANA was legally entitled to charge during the corresponding monthly billing cycle.

13.     In addition, beginning in March 2007, SCANA unlawfully charged its Legacy SCANA Customers who were enrolled in the SCANA Variable Choice Plan customer service charges that exceeded the maximum rate at which SCANA was legally entitled to charge for a given monthly billing cycle.

14.     Also, beginning in March 2007, SCANA customers who had been on a fixed-rate contract set to expire during or after March 2007 were unlawfully charged a price for natural gas and customer service charges that were higher than the "current variable rate" as promised by SCANA.

15.     As explained in more detail below, SCANA made material

misrepresentations and also concealed material facts from Plaintiffs and Class

Members to prevent them from finding out that they were being overcharged.

16.     As a result, as explained below, SCANA violated O.C.G.A. §46-4-160(h),

Commission Rule 515-7-6-.02(a)(5), Commission Rule 515-7-6-.02(a)(9) and the

Consumers' Bill of Rights set forth in O.C.G.A. §46-4-151(b)(9)(A)-(I).

17.     These excessive charges caused Plaintiffs and Class Members to suffer

damages while SCANA reaped millions of dollars in increased revenues.

**I.      SCANA'S UNLAWFUL SCHEME**

**A.     SCANA'S VARIABLE RATE PLANS**

18.     There are two SCANA variable plans at issue: the SCANA Variable Pricing

Plan and the SCANA Variable Choice Plan.

**1.     SCANA'S VARIABLE PRICING PLAN**

19.     Prior to March 2007, SCANA's Variable Pricing Plan was the company's

"standard variable offer" pursuant to the Natural Gas Competition and

Deregulation Act and the rules and regulations promulgated thereunder.

20.     At all times material, Plaintiffs were Legacy SCANA Customers in the

Variable Pricing Plan.

21.     The "standard variable offer" is also commonly known in the natural gas

industry as the "default" variable price plan, because any customer who does not

affirmatively select a non-standard variable or fixed plan (e.g. SCANA Variable Choice Plan) is enrolled in the "standard variable offer." Also, a customer who is enrolled in a fixed rate plan (e.g. a 12-month fixed plan) will automatically be switched into the marketer's standard variable offer upon the expiration of the contract term unless they affirmatively select another plan.

22.     The price of natural gas in SCANA's Variable Pricing Plan fluctuates each month based on market conditions.

23.     At all times material, Plaintiffs and Class Members who were enrolled in SCANA's Variable Pricing Plan expected to pay the competitive market rate, i.e. the "going rate" for natural gas each month.

24.     SCANA's standard Terms and Conditions of its variable rate plans, and Commission Rule 515-7-3-.04(14) of the Gas Act, required SCANA to offer only one default or standard variable rate plan in a given billing cycle.

25.     Without notice to Plaintiffs and Class Members in March 2007, SCANA changed the name of its Variable Pricing Plan to the "Standard Variable Rate Plan." Contrary to its name, however, the new "Standard Variable Rate Plan" ceased to be SCANA's standard variable offer after March 1, 2007.

26.     SCANA closed the Standard Variable Rate Plan to new customers so that only Legacy customers such as Plaintiffs and Class Members were participants in the plan.

27.     Simultaneously in March 2007, SCANA created a new standard variable rate plan called the "SCANA Variable Plan."

28.     The "SCANA Variable Plan" was only available to new customers who signed up with SCANA on or after March 1, 2007.

29.     By renaming the Variable Pricing Plan the Standard Variable Rate Plan, SCANA intended to, and did, deceive its Legacy customers into believing that they were still on the SCANA standard variable offer when in fact they were not.

30.     SCANA's intention in using this surreptitious name change "shell game" was to create a mechanism by which it could increase its revenue at the expense of its Legacy customers while still improving its ability to market to new potential customers.

31.     At the same time, SCANA also unlawfully changed the methodology with respect to the calculation and charging of the natural gas price to Legacy Customers in the renamed Standard Variable Rate Plan[3] in two important respects.

32.     First, SCANA changed the methodology from the competitive rate previously charged to Legacy customers to a non-competitive unregulated rate.

33.     This change was designed to, and did, take advantage of the misleading name change in order to raise gas prices deceptively on Legacy customers without their knowledge or opportunity to object.

_____

[3]     Hereinafter, Plaintiffs will refer to the Standard Variable Rate Plan as the "Old Variable Rate Plan."

34.     Then after March 2007, the competitive market price for natural gas was only offered to new customers in the SCANA Variable Plan.

35.     Second, SCANA further changed the methodology for pricing the Old Variable Rate Plan by adding an additional incremental profit margin over and above the pricing for the new SCANA Variable Plan, again gouging Legacy customers without notice to them.

36.     In comparison, the methodology used to calculate the price of natural gas in the new SCANA Variable Plan was computed in the same manner as the Old Variable Rate Plan was computed prior to March 2007, which did not include the incremental profit margin at that time and prior to the surreptitious plan name change.

37.     Commission Rule 515-7-6-.02(a)(9) required SCANA to provide Plaintiffs and Class Members 25 days written notice prior to changing the pricing methodology in the Old Variable Rate Plan.

38.     Commission Rule 515-7-6-.02(a)(9) required that notice of such new or additional charges or methodology modifications be written in clear and conspicuous language and inform the consumer of the right to cancel service without penalty by calling, writing,or electronically contacting the marketer within three days from receipt of the notice.

39.     Commission Rule 515-7-6-.02(a)(9) also prohibited SCANA from charging Plaintiffs and Class Members in the Old Variable Rate Plan a higher rate as a result of such new methodology unless such notice had been given.

40.     SCANA did not provide Legacy Customers, including Plaintiffs and Class Members, with notice pursuant to Commission Rule 515-7-6-.02(a)(9) of the plan name change or the pricing methodology change to the renamed plan.

41.     From March 1, 2007 to the present, Plaintiffs and Class Members in the Old Variable Rate Plan were charged more for the price of natural gas than new SCANA customers in the new SCANA Variable Plan - a plan that computed the price of natural gas in the same manner as the "old" Variable Pricing Plan prior to March 2007.

42.     Absent notice from SCANA pursuant to Commission Rule 515-7-6-.02(a)(9), Plaintiffs and Class Members in the Old Variable Rate Plan had no way to know that SCANA changed its pricing methodology in March 2007 because that information is proprietary and filed with the PSC under seal as a trade secret.

43.     In furtherance of its deceptive scheme, SCANA concealed its plan changes from Legacy customers, including Plaintiffs and Class Members, in several other ways.

44.     First, beginning in March 2007, SCANA concealed these changes from Plaintiffs and Class Members by intentionally "filing" with the PSC the price per

therm for the Old Variable Rate Plan in a cover letter to the Commission instead of the required Monthly Pricing Forms.[4]

45.     According to PSC protocol, SCANA was required to file its monthly price filings on a prescribed form entitled Monthly Marketer Pricing Form. This is to ensure that all of the information required by Commission Rule 5l5-7-3-.04(14) is disclosed.

46.     The PSC takes the information provided on the Monthly Marketer Pricing Form and creates a consumer-friendly, easy to understand comprehensive chart containing the current gas charges for every marketer. The PSC publishes the comprehensive chart on its website so that consumers can compare prices and choose the lowest cost provider.

47.     SCANA filed the natural gas price for the Old Variable Rate Plan on a cover letter so that it would not be included in the comprehensive chart and, as a result, would not be seen by Legacy customers, including Plaintiffs and Class Members.

48.     As a result, no reasonable person of ordinary intelligence could possibly have discovered that he or she was being overcharged by looking at the PSC website.

---

[4]     By alleging that SCANA "filed" the price per therm on a cover letter, Plaintiffs do not concede that this constitutes a "filing" pursuant to Commission Rule 515-7-3-.04(14), and in fact, dispute that the submission was a "filing" because SCANA did not include all of the information required by that Commission Rule.

49.     Even if, however, a Legacy SCANA customer somehow would have known of, or had the ability to find, the cover letter referenced above, he or she would have found two standard variable offers - one on a cover letter called the Standard Variable Rate Plan and another called the SCANA Variable Plan, neither of which matched the name of the Old Variable Rate Plan they were subject to, and further keeping such Legacy Customers from discovering the scheme.

50.     As explained above, however, Commission Rule 515-7-3-.04(14) only permitted SCANA to offer one standard variable rate plan, which, after March 1, 2007, was the SCANA Variable Plan.

51.     Therefore, renaming the Variable Pricing Plan the Standard Variable Rate Plan was a material misrepresentation by SCANA.

52.     SCANA made this misrepresentation with the intent to deceive its Legacy Customers in the Old Variable Rate Plan into believing that they were still on the SCANA standard variable offer when, in fact, they were not.

53.     Legacy Customers in the Old Variable Rate Plan reasonably relied on SCANA's misrepresentation that they were still on SCANA's default variable plan during and after March 2007.

54.     SCANA's misrepresentation caused Legacy Customers including Plaintiffs and Class Members in the Old Variable Rate Plan to suffer damages because they

paid a price for natural gas that exceeded the published rate in SCANA's true default plan, the SCANA Variable Plan.

55.    Another way in which SCANA concealed the fact that Legacy Customers in the Old Variable Rate Plan including Plaintiffs and Class Members were no longer on SCANA's default pricing plan was by modifying its website in such a way that no reasonable person could have learned that he or she was being overcharged for the price of natural gas.

56.    SCANA caused additional confusion by referring to the Variable Pricing Plan in its Terms and Conditions and other disclosure documents disseminated to Plaintiffs and Class Members by several different names such as "Variable," "Variable Rate," "Variable Rate Plan," and "Variable Pricing Plan."

57.    Finally, on every customer's monthly bill before and after March 2007, SCANA further concealed its deceptive conduct by referring to every variable plan as "Variable Rate" regardless of the variable rate plan in which SCANA's customers were enrolled.

58.    No reasonable person, therefore, could have simply compared his or her monthly bill or his or her Terms and Conditions to the PSC's or SCANA's website (or vice versa) to determine that he or she was being overcharged, given that SCANA offered multiple variable rate plans during the Class Period - a standard

variable rate and several non-standard variable rate plans such as the SCANA Variable Choice Plan.

59.    Had Plaintiffs and Class Members known of the surreptitious plan name change and pricing changes they could have either switched their plans or gas marketers to get more competitive gas rates or refused to pay the additional increased charges as a result of SCANA's deceptive scheme.

## 2. SCANA'S VARIABLE CHOICE PLAN

60.    Prior to March 2007, SCANA's Variable Choice Plan was a non-standard variable rate plan that allowed participants to pay $.02 per therm for natural gas less than the "standard variable offer" (i.e. Variable Pricing Plan) in exchange for paying a higher monthly customer service charge of $6.95 instead of $5.75 per month.

61.    Just as with Legacy Customers in the Old Variable Rate Plan, SCANA unlawfully changed the methodology with respect to the calculation and charging of the natural gas price to its Legacy customers in the SCANA Variable Choice Plan.

62.    Beginning in March 2007, SCANA changed the pricing methodology in the SCANA Variable Choice Plan by continuing to charge Class Members a price for natural gas that was $.02 less than the Old Variable Rate Plan even though that plan was not SCANA's standard variable offer after March 1, 2007.

63.     In other words, by surreptitiously changing the name and pricing methodology of the Old Variable Rate Plan in March 2007, SCANA thereby also changed the pricing methodology in the SCANA Variable Choice Plan.

64.     After March 2007, Legacy Customers in the SCANA Variable Choice Plan should have been charged $.02 less than the price charged to customers in the SCANA Variable Plan -- SCANA's standard variable offer after March 1,2007.

65.     Commission Rule 515-7-6-.02(a)(9) required SCANA to provide Plaintiffs and Class Members 25 days written notice prior to changing the pricing methodology in the SCANA Variable Choice Plan.

66.     Commission Rule 515-7-6-.02(a)(9) required that notice of such new or additional charges or methodology modifications be written in clear and conspicuous language and inform the consumer of the right to cancel service without penalty by calling, writing or electronically contacting the marketer within three days from receipt of the notice.

67.     Commission Rule 515-7-6-.02(a)(9) also prohibited SCANA from charging Class Members a higher rate as a result of such new methodology unless such notice has been given.

68.     SCANA failed to provide Class Members with notice pursuant to Commission Rule 515-7-6-.02(a)(9).

69.     Absent notice from SCANA pursuant to Commission Rule 515-7-6-.02(a)(9), there would have been no way for Class Members in the SCANA Variable Choice Plan to know that SCANA changed its pricing methodology in March 2007 because that information is proprietary and filed with the PSC under seal as a trade secret.

70.     As a result, SCANA violated O.C.G.A. §46-4-160(h), Commission Rule 515- 7-6-.02(a)(5) and Commission Rule 515-7-6-.02(a)(9) by changing the methodology for calculating the price for natural gas (per therm) and charging Class Members a price that exceeded $.02 less than SCANA's published natural gas prices.

71.     In addition, SCANA violated O.C.G.A. §46-4-160(h), Commission Rule 515-7-6-.02(a)(5) and Commission Rule 515-7-6-.02(a)(9) by continuing to charge its customers the higher $6.95 customer service charge given that it no longer was charging SCANA Variable Choice Plan customers $.02 less than the "standard variable price" for natural gas.

72.     Also, as described below, Legacy SCANA Customers who had a fixed-rate contract set to expire during or after March 2007 were also harmed by SCANA' s deceptive scheme.

73.     Upon information and belief, SCANA sent each Class Member who had a

fixed rate set to expire a letter approximately one month before the fixed rate plan

expired. The letter stated in pertinent part:

> When your current plan expires next month, you can choose a new
> fixed or variable rate. <u>In the event that you do not notify us of your</u>
> <u>choice, you will be placed on the current variable rate</u>[.] (Emphasis
> added.)

74.     Upon information and belief, SCANA did not, however, charge Class

Members "the current variable rate" as promised and as a result this constitutes a

material misrepresentation.

75.     Instead, those customers were transferred into the SCANA Variable Choice

Plan, which charged prices for natural gas and customer service charges that were

higher than the current variable rate, which, after March 1, 2007, was the SCANA

Variable Plan.

76.     Legacy Customers who fell into this category reasonably relied on SCANA's

misrepresentation and as a result were damaged by SCANA's violations of

O.C.G.A. §46-4-160(h), Commission Rule 515-7-6-.02(a)(5) and Commission

Rule 515-7-6-.02(a)(9).

## II.     ADDITIONAL SUBSTANTIVE ALLEGATIONS

77.     SCANA discovered the above-described billing error and/or had it called to

its attention more than 30 days ago. As a result, the burden is on SCANA to prove

that Plaintiffs and Class Members were not overcharged for the price of natural gas.

78.     As a result of the above-described billing error, SCANA violated O.C.G.A. §46-4-160(h), Commission Rule 515-7-6-.02(a)(5), Commission Rule 515-7-6-.02(a)(9) and the Consumers' Bill of Rights set forth in O.C.G.A. §46-4-151(b)(9)(A)-(I).

## III. INJURIES TO THE CLASS

79.     As a direct and proximate result of the foregoing, Plaintiffs and the Class Members have been damaged.

## IV. CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action on behalf of themselves and all other individuals similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). The class of persons which Plaintiffs seek to represent is defined as:

> All individuals or entities who during the period from March 1, 2007 to the present were Georgia residents and Legacy SCANA Customers who were overcharged by SCANA for the price of natural gas (per therm) and/or customer service charges.

81.     The Class excludes Defendant, any parent, subsidiary or affiliate of the defendant, any entity in which defendant has a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities. The

Class also excludes all employees and attorneys currently working with the law firms of The Doss Firm, LLC and Chestnut Cambronne PA

82.     This case is properly brought as a class action under  Fed. R. Civ. P. 23(a) and (b) for the reasons set forth in the following paragraphs.

83.     Numerosity under Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that separate joinder of each member is impracticable. On information and belief, the number of individuals qualifying for class membership exceeds 100,000 persons and all of those individuals can be readily identified through defendant's records. Therefore, class notice can easily be mailed to all Class Members in the event that the Class is certified by this Court.

84.     Commonality under Fed. R. Civ. P. 23(a)(2): There are numerous, substantial questions of law and fact common to the Class relating to SCANA's centrally-orchestrated scheme which was directed and implemented in a uniform fashion toward members of the Class. The common questions include, but are not limited to:

        a. Whether SCANA unlawfully overcharged Legacy SCANA Customers prices for natural gas and customer service charges in violation of O.C.G.A.  §46-4-160(h), Commission Rule 515-7-6-.02(a)(5) and Commission Rule  515-7-6-.02(a)(9);

b. Whether SCANA intentionally violated O.C.G.A. §46-4-160(h), Commission Rule 515-7-6-.02(a)(5) and Commission Rule 515-7-6-.02(a)(9);

c. Whether SCANA violated Commission Rule 515-7-3-.04(14);

d. Whether SCANA intentionally violated Commission Rule 515-7-3-.04(14);

e. Whether SCANA modified the methodology used to compute the price Legacy SCANA Customers paid for natural gas that resulted in excessive payments by Legacy SCANA Customers;

f. Whether SCANA failed to provide at least 25 days notice to Legacy SCANA Customers prior to the implementation of the new methodology in violation of Commission Rule 515-7-6-.02(a)(9);

g. Whether SCANA violated Plaintiffs' and Class Members' rights pursuant to the Consumers' Bill of Rights set forth in O.C.G.A. §46-4-151(b)(9)(A)-(I); and

h. Whether Plaintiffs and members of the Class are entitled to an award of damages against SCANA, and, if so, in what amount.

85.   The amount of damages awardable to Plaintiffs and each Class Member can easily be determined from SCANA's computerized records.

86.   There is no need for any manual computation of these amounts because, among other things, the precise amount of money unreasonably, unlawfully,

unfairly, and wrongfully taken from Plaintiffs and each Class Member can be computed through the data processing system possessed by SCANA.

87.     Typicality under Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the Class because Plaintiffs and each Class Member are (or during the relevant period were) residents of Georgia and Legacy SCANA Customers who were misled, deceived, and damaged in the same way by the above-described misconduct of SCANA.

88.     Adequacy of Representation under Fed. R. Civ. P. 23(a)(4): Plaintiffs are adequate representatives of the Class because of the identity of interest between Plaintiffs and the Class, having suffered the same harm, and Plaintiffs' ability and commitment to protect and advance that common interest.

89.     Plaintiffs were misled, deceived and damaged by the above-described misconduct of SCANA in the same way as the Class Members.

90.     Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all other citizens of the State of Georgia similarly situated. To this end, they have retained competent counsel, experienced in this type of complex civil litigation. Moreover, there is no hostility between Plaintiffs and the unnamed Class members.

91.     Plaintiffs anticipate no difficulty in the management of this litigation as a class action. The Doss Firm, LLC and Chestnut Cambronne PA have the financial

resources to meet the substantial costs and legal issues associated with this type of litigation. Both firms have significant experience in class action litigation.

92.     Predominance under Fed. R. Civ. P. 23(b)(3). The numerous, substantial questions of law and fact common to the Class related to SCANA's wrongdoing predominate over any individual issues of law and fact. As such, paragraph 84 is re-alleged and incorporated by reference.

93.     The basic premise in this case is that SCANA unlawfully charged Plaintiffs and Class Members prices for natural gas and customer service charges that exceeded SCANA's published price effective at the beginning of the consumers' billing cycle in violation of the laws and rules provided for by the "Natural Gas Competition and Deregulation Act" and the rules and regulations promulgated thereunder.

94.     Superiority under Fed. R. Civ. P. 23(b)(3): A class action is superior to other available methods for the fair and efficient adjudication of this controversy herein because (a) individual claims by Plaintiffs or the Class Members are impractical as the costs of pursuit far exceed what Plaintiffs or anyone Class Member has at stake; (b) it is desirable to concentrate litigation of the claims herein in this forum; and (c) the proposed Class is manageable. The action will cause an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered.

95.    The potential for nearly identical claims makes certification convenient and desirable, particularly for those individuals who might otherwise be left without a viable remedy. Virtually all of the underlying issues in this case are amenable to resolution through the avenue of class action. In the alternative, a failure to certify the Class may result in an enormous number of lawsuits involving the same core issues, which concern common issues and standardized documents, with the potential for disparate results in cases that are substantially the same. Furthermore, such separate actions would result in the expenditure of unnecessary time and expense, not only by the courts involved and the plaintiffs (many of whom could not afford it), but SCANA as well. In addition, many plaintiffs would be discouraged from pursuing their claims by the prospect of such expenses, and individual plaintiffs would be without sufficient strength to bring SCANA into court at all, a fact known to SCANA.

96.    There is nothing to suggest that the alternative (individual lawsuits) would be superior to a class action procedure for deciding and resolving the essential issues that are at the heart of this case. Indeed, it would be more difficult to justify the resolution of those fundamental factual and legal issues in separate lawsuits, with the prospect of diverse and inconsistent rulings and verdicts from multiple courts, and the vast waste of judicial time such multiplicity would require.

97.    Class action treatment of this litigation is the only proper and workable solution. The class action would be manageable by focusing on the key issues: (1) the evaluation of SCANA's alleged misconduct as a whole; (2) evaluating the specific acts or omissions of SCANA by reference to documents, witnesses and expert opinion testimony in a single forum; and (3) applying the legal remedies to the Class as a whole.

98.    By the same token, class treatment will provide a vehicle to alert Class Members of their rights and avoid typical burdens of individual actions, including the difficulty of finding an attorney to prosecute the matter.

99.    When all the recognized factors are considered in determining whether this matter should be certified, none is more compelling than the obvious fact that to deny certification would effectively deny the opportunity to be heard to many individuals and would at the same time potentially create at best an unmanageable and protracted series of individual lawsuits. At worst, it would leave thousands of individuals who need class certification without a practical remedy of any sort. Thus, the denial of class treatment in this case would not only burden the court system, but would also result in the denial of justice to citizens who cannot afford to pursue their individual claims since SCANA has their money and will retain their money unless justice prevails.

## COUNT I

**RIGHT OF RECOVERY PURSUANT TO SUBSECTION (a) OF O.C.G.A. §46-4-160.5 FOR VIOLATIONS OF O.C.G.A. §46-4-160(h), COMMISSION RULE 515-7-6-.02(a)(5) and COMMISSION RULE 515-7-6-.02(a)(9)**

100.   Plaintiffs re-allege the allegations in paragraphs 1-99 above as if fully set forth herein.

101.   Plaintiffs and Class Members were damaged by SCANA's violation of O.C.G.A §46-4-160(h) and duly promulgated Commission Rules SIS-7-6-.02(a)(5) and SIS-7-6-.02(a)(9), as set forth above.

102.   As a direct and proximate result of the foregoing violations, Plaintiffs and Class Members were damaged.

103.   Plaintiffs and Class Members are entitled to maintain this action and to recover from SCANA actual damages sustained by each of them, as well as incidental damages, consequential damages, reasonable attorneys' fees, and court costs, pursuant to O.C.G.A. §46-4-160.5(a).

## COUNT II

**RIGHT OF RECOVERY PURSUANT TO SUBSECTION (b) of O.C.G.A. § 46-4-160.5 FOR VIOLATIONS OF O.C.G.A. § 46-4-160(h), COMMISSION RULE 515-7-6-.02(a)(5) AND COMMISSION RULE COMMISSION RULE 515-7-6-.02(a)(9)**

104.   Plaintiffs re-allege the allegations in paragraphs 1-99 above as if fully set forth herein.

105.   SCANA's violations of O.C.G.A. §46-4-160(h) and duly promulgated Commission Rules 515-7-6-.02(a)(5) and 515-7-6-.02(a)(9) were intentional.

106.   As a direct and proximate result of the foregoing intentional violations of the provisions mentioned in the proceeding paragraph, Plaintiffs and Class Members were damaged.

107.   In addition to their right of recovery under O.C.G.A. §46-4-160.5(a) as set forth in Count I above, Plaintiffs and Class Members are entitled to any remedy available under Part 2 of Article 15 of Chapter I of Title 10, the "Fair Business Practices Act of 1975," including a judgment against SCANA for general damages, exemplary damages, and treble damages, pursuant to O.C.G.A. §46-4-160.5(b).

## COUNT III

### VIOLATION OF O.C.G.A. §46-4-160.2

108.   Plaintiffs re-allege the allegations in paragraphs 1-99 above as if fully set forth herein.

109.   SCANA violated O.C.G.A. §46-4-160.2 by failing automatically to correct the above-described billing errors or mistakes within 30 days from the date that such billing error or mistake was discovered by SCANA or brought to its attention.

110.   As a result, the burden is now on SCANA to prove that Plaintiffs and Class Members amount charged for natural gas and customer service charges were correct.

111.   If at a trial, SCANA fails to prove that the amount Plaintiffs and Class Members were charged for natural gas and customer service charges was correct, then it is required, pursuant to O.C.G.A. §46-4-160.2. to credit the amount of the overpayment to the account of Plaintiffs and Class Members automatically and immediately or pay a refund in the amount of the overpayment.

WHEREFORE, Plaintiffs demand judgment against Defendant SCANA Marketing, Inc. for themselves and the Class Members as follows:

a. Determining that the action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

b. Awarding all actual damages, exemplary or punitive damages, treble damages, interest, attorneys' fees, and costs against SCANA in an amount to be determined at trial; and

c. Granting such other relief, including injunctive relief, as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand trial by jury on all issues triable at law.

Dated: February 25, 2013


/s/ Jason R. Doss_____
Jason R. Doss
Georgia Bar No. 227117
The Doss Firm, LLC
P.O. Box 965669
Marietta, Georgia 30066
(770) 578-1314 (Telephone)
(770) 578-1302 (Facsimile)
jasondoss@dossfirm.com

**CHESTNUT CAMBRONNE PA**
Karl L. Cambronne (MN No. 14321)
Jeffrey D. Bores (MN No. 227699)
Bryan L. Bleichner (MN No. 0326689)
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
Facsimile: (612) 336-2940
kcambronne@chestnutcambronne.com
jbores@chestnutcambronne.com
bbleichner@chestnutcambronne.com